1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10    EDWARD MOTEN,

11              Petitioner,                    No. 2:05-cv-02008 ALA HC

12        vs.

13    D.K. SISTO, Warden[1],

14              Respondent.                    <u>ORDER</u>

15    _____/

16        Pending before the Court are Edward Moten's ("Petitioner") amended application for a

17    writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) filed on February 20, 2007 (doc. 18),

18    Respondent's answer (doc. 22), and Petitioner's traverse (doc. 24).  Also, before the Court are

19    the parties' briefs filed in response to this Court's December 19, 2007 order requesting

20    additional briefing on the applicability of *Irons v. Carey*, 505 F.3d 841 (9th Cir. 2007) to this

21    matter.  For the reasons discussed below, Petitioner's application is denied.

22                                         **I**

23        On January 17, 1987, a jury in the Alameda County Superior Court convicted petitioner

24    of second degree murder and found that he was personally armed with an automatic pistol and

25    _____

26        [1]D.K. Sisto is substituted for his predecessor, Tom Carey, as the warden where the
      prisoner is incarcerated, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1   used it in the commission of the crime.   He was sentenced to serve a term of imprisonment of

2   seventeen years to life.

3        Petitioner is currently incarcerated in the California State Prison, Solano.  He requests

4   that this Court hold that the state court violated his federal constitutional rights in upholding the

5   Board of Prison Terms ("BPT") finding that he was unsuitable for parole release at its hearing on

6   May 13, 2004.

7                                         **II**

8                                         **A**

9        During the May 13, 2004 hearing, the BPT summarized the facts of the commitment

10  offense from the probation report as follows:

11       On February 9, 1981, Petitioner, Robert Porter, and Patricia Parsons waited at a rest stop

12  in a yellow 1977 Oldsmobile automobile for approximately two hours.  Shortly after they

13  arrived, Petitioner left the car.  He went to a telephone.  When he returned, Petitioner told Porter

14  he had damaged the telephone so that no one could use it.

15       Porter then went to the telephone and broke it and threw a piece of it away.  Later,

16  Petitioner told Porter he needed some rope to tie someone up with it.

17       Petitioner then waited in the restroom for awhile.  When he returned to the car, he stated

18  it was freezing in the restroom.  Petitioner retrieved some rope from the trunk of the car.  Porter

19  cut the rope into several pieces.

20       The three waited in the car while several automobiles came and went.  At one point

21  Petitioner woke Porter up and told him,  "This looks like something right here.  Let's check it

22  out."

23       A male witness who was in the back restroom heard two shots.  He turned around and

24  saw Petitioner straddling John Fletcher.  Petitioner pointed a gun at the witness, and then turned

25  away and left the restroom.  Another witness reported that after she heard two shots, she saw two

26  men hurry from the restroom get into a yellow car and drive off.

1   When Parsons asked Petitioner and Porter about the sounds she had heard, she was told it
2   was probably fire crackers.  She was instructed not to drive over fifty-five miles per hour and if
3   they were stopped, she should deny that they had been at the rest area.

4   A witness asked the victim why he thought he had been shot and whether he had been
5   robbed.  The victim replied: "I don't know.  I don't know.  I'm going to die.  I'm going to die."

6   The yellow Oldsmobile driven by Ms. Parsons was stopped by Placer County deputy
7   sheriffs.  A nine millimeter Berretta handgun was found in the car.  It was the murder weapon.
8   Petitioner was found guilty of personally using a firearm during the commission of a homicide.

9                                                            **B**

10   At the beginning of the May 13, 2004 hearing, Petitioner was instructed that "you are not
11   required to admit your offense nor are you required to discuss the offense."  Petitioner was
12   represented by counsel at the hearing.

13   After the presiding commissioner summarized the facts regarding the commitment
14   offense, he asked Petitioner "did you commit this crime."  Petitioner responded: "I was at the
15   rest stop at the time of the crime.   Although I was found guilty of arming and use.  I did not pull
16   the trigger and kill Mr. Fletcher but I take full responsibility for moral responsibility for it."
17   BPT's May 13, 2004 proceedings at p. 14.

18   Petitioner told the BPT that they were at the rest stop because Parsons, Porter's
19   girlfriend, was turning tricks in the restroom.  Petitioner stated that Parsons had words with a
20   man in the restroom.  Parsons returned to the car and whispered something in Porter's ear.
21   Porter left the car.  Petitioner followed him into the restroom a short time later.  Petitioner
22   observed Porter having words with Mr. Fletcher.  Porter then removed a pistol from his jacket
23   and shot the victim twice.  Petitioner told the BPT that he reached over Porter as he shot the
24   victim.  Porter then left the restroom while Petitioner grabbed the victim as he slid to the floor.
25   Petitioner stated he looked up and saw another man in the restroom.  Petitioner left and went
26   back to the car.  Petitioner stated that when he returned to the car, he asked Porter what

1   happened.  Porter stated the victim "disrespected" Parsons.  Petitioner told the BPT that the

2   crime was a "ridiculous" and "senseless" murder.  *Id.* at 17.  Petitioner also told the BPT: "I did

3   not pull the trigger. . . .  I did not encourage this."  *Id.* at 22.[2]

**III**

5       The BPT concluded that Petitioner was unsuitable for parole because he would pose an

6   unreasonable threat to public safety if released from prison.  Petitioner filed a petition for a writ

7   of habeas corpus in the California Supreme Court on November 8, 2004, in which he challenged

8   the BPT's denial of a parole release date.

9       In his state petition, he contended that the BPT deprived him of his federal right to due

10  process and equal protection under the Fourteenth Amendment by denying him a parole release

11  date.  The California Supreme Court summarily denied his petition on September 21, 2005.

12      Petitioner filed a timely application for a writ of habeas corpus in this Court pursuant to

13  28 U.S.C. § 2254(a) on October 5, 2005. (doc. 1).  Subsequently, Petitioner filed an amended

14  application for habeas corpus relief on February 20, 2007.  (doc. 18).

**IV**

**A**

17      Petitioner alleged in his amended Petition that the Board violated his Fourteenth

18  Amendment due process rights because it (1) relied on the manner in which the underlying crime

19  was executed; (2) recommended he seek additional therapy; (3) considered and incorporated a

20  threat assessment authored by a correctional counselor; (4) operated in a manner that was not in

21  compliance with it governing statute P.C. § 3041(a); (5) denied him an impartial suitability

22  hearing; (6) failed to adhere to the mandates of P.C. §1170(a)(1); and (7) failed to honor the

---

[2] In finding that Petitioner posed an unreasonable risk of danger to society if released from prison, the BPT discredited Petitioner's version of the commitment offense.  Pursuant to § 2254(e)(1) "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Petitioner failed to rebut the jury's finding that he murdered the victim by clear and convincing evidence.

4

1   release dates provided to Petitioner by the CDCR.

2       An application for a writ of habeas corpus on behalf of a person in custody pursuant to a

3   state court judgment "shall not be granted with respect to any claim that was adjudicated on the

4   merits" in state court unless the adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

9   28 U.S.C. § 2254(d).

10                                        **B**

11      Citing Ninth Circuit authority, Petitioner contends in his amended application that this

12   Court has jurisdiction over this matter because a state prisoner has a liberty interest in being

13   released on parole under California law that is protected by the Due Process Clause of the

14   Fourteenth Amendment.  In his answer to the application, Respondent maintains that this Court

15   may not grant Petitioner's application pursuant to § 2254(d) because the state court's denial of

16   habeas corpus relief was not contrary to clearly established Federal law, as determined by the

17   Supreme Court of the United States.  Respondent contends that no decision of the United States

18   Supreme Court has held that a state prisoner has a federally protected interest in release on

19   parole under California Penal Code §3041.  This contention is contrary to the Ninth Circuit's

20   decision in *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d, 1123, 1127-28 (9th Cir. 2006).  This

21   Court must reject Respondent's contention under compulsion of Ninth Circuit precedent that

22   provides that "California's parole scheme gives rise to a cognizable liberty interest in release on

23   parole." *Id.*  at 1127 (citation omitted).

24      In his response to this Court's December 19, 2007 Order for supplemental briefing

25   regarding the applicability if any, of *Irons v. Carey*, 479 F.2d 658 (9th Cir. 2007) to this matter,

26   Respondent argues that because the Supreme Court has never applied the some evidence test to a

5

1  parole decision, this Court is not required to follow *Irons* in disposing of this application.

2  In *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Supreme Court held that

3  "revocation of good time does not comport with 'the minimum requirements of procedural due

4  process,' unless the findings of the prison disciplinary board are supported by some evidence in

5  the record." (Citation omitted). This Court is bound by the Ninth Circuit holding that *Hill's*

6  "some evidence" standard applies to parole release proceedings. *Sass,* 461 F.3d at 1128-29; *See*

7  *Irons*, 505 F.3d at 851 ("the Supreme Court ha[s] clearly established that a parole board's

8  decision deprives a prisoner of due process with respect to this interest if the board's decision is

9  not supported by 'some evidence in the record,' . . . or is 'otherwise arbitrary'").

10  This Court cannot contravene that holding. *See Zuniga v. United Can Co.*, 812 F.2d 443,

11  450 (9th Cir. 1987) (citation omitted) ("District courts are, of course, bound by the law of their

12  own circuit, and 'are not to resolve splits between circuits no matter how egregiously in error

13  they may feel their own circuit to be.'"). Therefore, this Court must reject Respondent's

14  argument that the some evidence standard does not apply.

15  In *Irons*, the Ninth Circuit held that

16      where, as here, there is some evidence to support a finding that
        "the offense was carried out in a manner which demonstrates an
17      exceptionally callous disregard for human suffering" and the
        "motive for the crime is inexplicable or very trivial in relation to
18      the offense," Cal. Code Regs., tit. 15 §2402(c)(1)(D)-(E), we
        cannot say that the state court unreasonably applied *Hill's* "some
19      evidence" principle.

20  *Irons*, 505 F.3d at 853.

21  In *Irons*, the record showed that the BPT relied solely on the commitment offense in determining

22  that the prisoner was not suitable for release on parole. *Id*. at 852.

23  The Ninth Circuit limited its holding in *Irons* as follows: "All we held in [*Sass*, 461 F.3d

24  at 1125 and *Biggs v. Terhune*, 334 F.3d 910, 912 (9th Cir. 2002)] and all we hold today,

25  therefore, is that, given the particular circumstances of the offenses of these cases, due process

26  was not violated when these prisoners were deemed unsuitable for parole prior to the expiration

6

of their minimum terms."  505 F.3d at 853-54.  In an unusual comment in *Irons*, the panel

expressed its aspiration that some future court decision will conclude that the BPT has the duty

to grant parole where "there was substantial evidence in the record demonstrating rehabilitation."

*Id.* at 854.

The Court stated:

> We hope that the Board will come to recognize that in some cases,
> indefinite detention based solely on an inmate's commitment
> offense, regardless of the extent of his rehabilitation, will at some
> point violate due process, given the liberty interest in parole that
> flows from the relevant California statutes.

*Id.*

The *Irons* panel did not cite any authority to support its prognostication that the denial by

the state court of habeas corpus relief, under such circumstances, would be "contrary to, or

involve [] an unreasonable application of clearly established Federal law, as determined by the

Supreme Court of the United States" in violation of 28 U.S.C. § 2254(d)(1).  No presently

binding Ninth Circuit decision has fulfilled the prediction of the *Irons's* panel.

In the precedential portion of the *Irons* decision, the Court held that "we must look to

California law to determine the findings that are necessary to deem a prisoner unsuitable for

parole, and then must review the record in order to determine whether the state court decision

holding that these findings were supported by 'some evidence.'" *Irons*, 505 F.3d at 851.  A

prisoner's commitment offense, on its own, may justify parole denial if "the Board can 'point to

factors beyond the minimum elements of the crime for which the inmate was committed' that

demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if

released."  *Id.* at 852 (quoting *Dannenberg*, 34 Cal. 4th 1061, 1071 (2005)).

Based on controlling Ninth Circuit authority, this Court must determine whether some

evidence supported the BPT's May 13, 2004 decision not to set a release date.  Because the

California Supreme Court rejected Petitioner's allegations of a denial of his right to due process

and equal protection of the law summarily, this court must independently review the record

1  before the state court to decide whether its decision was contrary to, or involved an unreasonable

2  application of clearly established Federal law as determined by the Supreme Court of the United

3  States. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

4  **V**

5  The BPT's May 13, 2004 decision reads as follows:

6  **PRESIDING COMMISSIONER PEREZ:** Mr. Moten, the Panel
   reviewed all information received from the public and relied on the
7  following circumstances in concluding that you are not suitable
   and would pose an unreasonable risk of society, danger to society
8  or threat to public safety if released from prison. It is the opinion
   of this Panel that the offense was carried out in a calculated
9  manner, and that the motive for the crime was inexplicable or very
   trivial in relationship with the offense, and that based on the
10 information contained in file it appears that this crime was
   committed for the purpose, a calculated purpose of committing a
11 robbery. According to the, and these conclusions are drawn from
   the Statement of Facts wherein the prisoner according to the life
12 prisoner evaluation report dated April 2003, indicates that on
   February 9th, 1981, John Fletcher, age 41, was shot and killed in a
13 restroom at the Gold Run Rest Stop. It appears that a nine
   millimeter Berretta weapon was used in the process of attempting
14 to rob this individual while he was in the bathroom at that rest
   stop. It is the opinion of this Panel that you had the opportunity to
15 cease from committing this offense and chose not to. It is the
   opinion of this Panel that the opportunity was there to call 911 or
16 call for help and that neither you or any of your crime partner, or
   your crime partner chose to do this. And it is also the opinion of
17 this Panel that if this offense was not carried out for the purpose of
   committing robbery then there is no explanation that we can cite
18 from the record as to why this offense was committed. According
   to the record, it appears that you have an escalating pattern of
19 criminal conduct and behavior, and that's based on the fact that
   you have prior criminal convictions dating back to 1972 in which
20 you were convicted fro armed robbery, three counts of
   transportation and sales of a controlled substance. In 1976, you
21 were convicted of burglary second, 1979, again, burglary second,
   and then in 1981, you committed the current commitment offense.
22 So within that nine-year span, you were convicted of those
   offenses and were also placed on probation and convicted or
23 committed to prison in order to attempt to correct your behavior.
   And based on the information in the file, you failed to profit from
24 society's attempts to correct your behavior by incarcerating you,
   by putting you on probation, and so forth as previously noted.
25 Although you have remained disciplinary-free during the past,
   since 1999, according to the file since the last time that you
26 appeared before the Board, you have incurred three counseling

1    chronos for I believe it was for, let me just check here.

2    **DEPUTY COMMISSIONER LEHMAN:** Two were grooming
      standards and one for failure to report.

3
      **PRESIDING COMMISSIONER PEREZ:** Two grooming
4    standards, failure to report.  Sir, I need to say what I need to say,
      Mr. Moten, and then you can speak to him afterwards.  Also,
5    according to the Board Report, on page four of the Board Report, it
      indicates that during the previous appearance before the Board,
6    you had requested a waiver of the hearing and a three-year denial
      which was granted, and that at that time you were, it was
7    recommended that you become disciplinary free, to upgrade
      vocationally, and to participate in self-help and therapy.  It's
8    apparent from the record that you are doing wonderfully in terms
      of upgrading yourself vocationally.  However, as I previously
9    noted, since your last appearance before the Board, you did receive
      those three 128(a) counseling chronos.  The Hearing Panel also
10   notes that pursuant to Penal Code Section 3042, the District
      Attorney of Placer County, Mr. Garen Horst, is in opposition to
11   your release to parole.  The Panel makes the following findings,
      sir, and that is that it is our opinion that you need further therapy in
12   order to face, discuss, understand, and cope with stress in a
      nondestructive manner.  It is our opinion, sir, that you are in denial
13   of this crime, and in denial of the facts, and the reasons why this
      crime was committed.  That is our opinion.  Nevertheless, we want
14   to take this opportunity to commend you for a variety of things.
      Based on the record, you have not received any 115s since 1999.
15   We also want to commend you for having completed academic and
      vocational – you've received academic and vocational certificates
16   during your incarceration, and also for having received a number
      of laudatory chronos from your supervisors in which they indicate
17   that you are a very good worker, also for your participation, I
      think, is for a total of 15 months in NA, and also for your
18   involvement in the creation and development of the Anger
      Management Program, and also for your participation in various
19   self-help programs.  In a separate decision, the Hearing Panel finds
      that it is not reasonable to expect that parole would be granted at a
20   hearing during the following two years for the reasons that I
      previously stated in regards to the fact that the offense was carried
21   out in a calculated manner and that it appears that this individual
      that was killed was killed during the commission of a robbery.
22   And if that's not the case then the motive for this crime is
      inexplicable and trivial in that there is nothing to indicate that this
23   individual posed a threat to yourself in that this was a case of self-
      defense.  And again, these conclusions are drawn from the
24   Statement of Facts, wherein the record indicates that John Fletcher,
      the victim in this case, was shot two times while he was in a
25   restroom at the Gun Rest, Gold Run Rest Stop.  And as previously
      stated, the other reason that we have given you a two-year denial is
26   because based on a review of the criminal rap sheet you have

1   committed an escalating pattern of criminal conduct in that you
    have criminal convictions dating back to 1972, and during that
2   nine-year period from 1972 up until 1982 when you committed the
    offense, you had convictions for armed robbery, three counts for
3   transportation and sales of controlled substance, two separate
    convictions for burglary, and then the 1981 murder with a firearm.
4   And again, as previously stated, the District Attorney of Placer
    County, Garen Horst, is in opposition to your parole.  In addition,
5   the counselor indicates that considering the commitment offense,
    prior record, and prison adjustment, this writer believes the
6   prisoner would pose an unpredictable degree of threat to the public
    at this time if released from prison.  The Panel recommends, ir,
7   that you become and remain disciplinary-free, that you upgrade
    educationally if it's available within the institution, that also if the
8   programs are available that you continue participating in self-help
    and therapy programs, and that you cooperate with clinicians in the
9   future in the completion of another clinical evaluation.  We're
    going to request that CDC complete another clinical evaluation
10  prior to your next appearance before the Board.  We're going to
    ask that a number of issues be taken into consideration and
11  assessed during that evaluation and that would be to, that would
    include your violence potential in the community, the significance
12  of alcohol and drugs as it relates to the commitment offense, the
    extent to which you've explored the commitment offense and
13  actually come to terms with the underlying cause, and the need for
    further therapy while incarcerated.  This concludes this hearing.
14  The time is 12:05 p.m.

15      **ATTORNEY RUSSO:** For the record, I want on the record that I
        was not allowed to confer with my client during the
16      Commissioner's statement of ruling.

17      **PRESIDING COMMISSIONER PEREZ:** Sir, sir what I would
        also like to get on the record is that when I'm in the process of
18      reading the Decision there's no reason for you to be conferring
        with you client.  Theat concludes this hearing.  The time is 12:05
19      p.m.

20                                      **A**

21      In his traverse, Petitioner contends that "[t]he Board's reasons, rooted in history, totally

22  revolve around the commitment offense."  Traverse at p. 7.  The record does not support this

23  mischaracterization of the BPT's opinion.  The BPT concluded that Petitioner was unsuitable for

24  release on parole because he presented an unreasonable danger to society in view of his

25  commitment offense, *as well as* his escalating pattern of criminal conduct and behavior prior to

26  killing his victim.  His prior criminal convictions dated back to 1972.  In that year, he was

                                      10

convicted of armed robbery and three counts of transportation and sale of a controlled substance.
In 1976, he was convicted of burglary.  In 1979, he was again convicted of burglary.  In 1981, he
committed the crime of murder.  During that nine year period, he was imprisoned and placed
under probation and parole supervision.  He served two prior state prison terms.  These prior
attempts by the state to rehabilitate him did not deter him from subsequently committing murder.

The BPT also based its decision on the fact that Petitioner was "in denial of this crime,
and in denial of the facts, and the reasons why this crime was committed."  BPT's decision at p.
88.  Petitioner's inability to accept responsibility for his conduct that resulted in the death of his
victim clearly supported the BPT's inference from this evidence that the length of his
imprisonment for murder had not had any effect on his ability to refrain from harming others if
he were released on parole.

**B**

In *Biggs*, in affirming the denial of a parole release date, the Ninth Circuit held that
"[California Penal Code] Section 3041(b) allows the gravity of the offense to be considered in
requiring a period of longer incarceration."  *Id.* 334 F.3d at 916.  Thus, Petitioner's contention
that the BPT cannot base its decision on the commitment offense is contrary to binding
precedent.  Section 3041(b) provides that the BPT

> shall set a release date unless it determines the gravity of the
> offense or offenses, or the timing and gravity of current or past
> convicted offenses or offenses, is such that consideration of the
> public safety requires a more lengthy period of incarceration for
> this individual and that a parole date, therefore, cannot be fixed at
> this meeting.

As noted above, the BPT declined to set a parole release date because it concluded that
"the offense was carried out in a calculated manner, and that the motive for the crime was
inexplicable or very trivial in relationship to the offense, and that based on the information in the
file it appears that this crime was committed for the purpose of a robbery."  The BPT also noted
that "you had the opportunity to cease from committing this offense and chose not to do so."

The BPT also commented that Petitioner had the opportunity "to call for help and neither you or any of your crime partner (sic), or your crime partner chose to do so."

California Code of Regulations § 2402 sets forth the circumstances that tend to show suitability for the release on parole of persons convicted of murder.  It provides as follows:

§2402.  Determination of Suitability

(a) General.  The panel shall first determine whether the life prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered.  All relevant, reliable information available to the panel shall be considered in determined suitability for parole.  Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release,.  Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

(c) Circumstances Tending to Show Unsuitability.  The following circumstances each tend to indicate unsuitability for release.  These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel.  Circumstances tending to indicate unsuitability include:

(1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability.  The following circumstances each tend to show that the prisoner is suitable for release.  The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel.  Circumstances tending to indicate suitability include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior

1    was the result of that victimization.

2    (6) Lack of Criminal History.  The prisoner lacks any significant
     history of violent crime.

3

4    (7) Age.  The prisoner's present age reduces the probability of
     recidivism.

5    (8) Understanding and Plans for the Future.  The prisoner has
     made realistic plans for release or has developed marketable skills

6    that can be put to use upon release.

7    (9) Institutional Behavior.  Institutional activities indicate an
     enhanced ability to function within the law upon release.

8
     "[T]he denial of parole may be predicated on a prisoner's
9    commitment offense only where the Board can 'point to factors
     beyond the minimum elements of the crime for which the inmate
10   was committed' that demonstrate the inmate will, at the time of the
     suitability hearing, present a danger to society if released."

11
     *Irons*, 505 F.3d at 852 quoting *In re Dannenberg*, 34 Cal. 4th 1061, 1071 (2005).

12

13          The California Supreme Court has defined the elements of second degree murder "as the

14   unlawful killing of a human being with malice aforethought, but without the additional elements,

15   such as willfulness, premeditation, and deliberation that would support a conviction of first

16   degree murder."  *People v. Knoller*, 41 Cal. 4th 139, 151 (2007).  "[M]urder which is perpetrated

17   by. . . lying in wait . . ., or which is committed in the perpetration of, or attempt to perpetrate. . .

18   robbery. . . is murder in the first degree."  California Penal Code §189.  The evidence at

19   Petitioner's trial demonstrated that he and his accomplices were lying in wait for two hours to

20   rob or murder a person who went to the restroom at a rest stop.  This conduct was clearly beyond

21   the minimum elements required to prove second degree murder.  For reasons that do not appear

22   in the record, the jury found Petitioner guilty of second degree murder, notwithstanding the

23   evidence of lying in wait and that the homicide was committed during the perpetration of a

24   robbery.  The fact that the jury did not find beyond a reasonable doubt that the evidence was

25   sufficient to support a conviction for first degree murder did not preclude the BPT from

26   considering such evidence in exercising its discretion to decline to set a parole release date.  *See*

                                                    14

1   *In re Rosenkrantz*, 29 Cal. 4th 616, 678-79 (2002).

2        The BPT found Petitioner unsuitable because of the circumstances described in §

3   2402(B) (*i.e.*, that the offense was carried out in a dispassionate and calculated manner).  The

4   evidence showed that Petitioner and his confederates were lying in wait for their unarmed prey

5   for two hours.  They destroyed a telephone that could have been used to summon an ambulance

6   to save their victim's life.  Petitioner secured rope to bind his victim.  Furthermore, Petitioner

7   fired a second shot at his helpless victim as a *coup de grace* to terminate his life.  The BPT also

8   found that the motive for killing an unarmed person in the perpetration of a robbery was

9   inexplicable or trivial in relation to the offense of murder.  In addition, the BPT concluded

10  Petitioner was unsuitable for parole release because of his escalating pattern of criminal behavior

11  which included a conviction for armed robbery.  During the decade before he committed murder,

12  he served two prison terms and was on probation.  This experience did not serve to rehabilitate

13  him or deter him from committing murder.

14       The BPT also considered the factors identified in § 2042 that demonstrated suitability for

15  parole release and praised him for upgrading himself vocationally, and his academic

16  achievements, as well as his laudatory chronos from his supervisors for his good work habits.

17       The BPT was also troubled by the fact that Petitioner continued to maintain at the hearing

18  that he was innocent of the commitment offense, notwithstanding the evidence produced at his

19  trial that he was seen by a witness standing over the victim's body with a handgun in his hand

20  immediately after two shots were fired.  This evidence was sufficient to persuade a jury beyond a

21  reasonable doubt that he personally used a firearm to kill his victim with malice aforethought.  In

22  his traverse, Petitioner asserts that

23       [t]here is yards of evidence supporting Moten's version of the
         offense that he did not shoot Fletcher, and Porter admitted as much
24       when he pled guilty to voluntary manslaughter with the use of a
         firearm.  Petitioner asks the Court to carefully review the
25       statements in Ground One of the Amended Petition as to the
         conduct of the prosecution in this case.

26

1  Petitioner's Traverse at p. 6

2      Petitioner's request that this Court reweigh the evidence of his guilt is contrary to the

3  Supreme Court's instruction in *Hill*.  There, the Supreme Court held that the determination

4  whether there is some evidence to support a prison board's decision "does not require

5  examination of the entire record, independent assessment of the credibility of witnesses or

6  weighing the evidence."  472 U.S. at 455.  The Supreme Court also stated a prison board's

7  decision is not "subject to second-guessing upon review."  *Id*.

8      In view of his admitted history of escalating criminal activity prior to murdering the

9  victim, shortly after being released from prison, and his continued insistence that he is innocent

10  of his commitment offense, this Court cannot conclude the BPT erred in determining that there is

11  some evidence his imprisonment has not affected his propensity to endanger society when he is

12  not behind prison walls under the watchful supervision of armed correctional officers.  The

13  calculated and callous nature of his commitment offense, his escalating criminal conduct after

14  prior attempts to rehabilitate him by imprisonment, probation and parole, clearly demonstrate

15  that the BPT did not err in concluding that the unsuitability circumstances for parole release

16  outweigh his stellar performance in complying with prison programs that did not expose him to

17  contact with potential victims outside of prison walls.

18                                          **VI**

19      Petitioner also contends that the "some evidence" standard in determining whether a

20  prisoner is suitable for release on parole "is not appropriate in the parole context."  Petitioner's

21  Traverse at p. 12.  As noted above, this argument has been rejected by the Ninth Circuit.  It is

22  also contrary to California case law.  *See In re Rosenkrantz*, 29 Cal. 4th 616, 658 (2002).

23      Petitioner also maintains in his traverse that the "'some evidence' standard is far too

24  deferential to the Board, and routinely results in findings and conclusions arbitrary, capricious

25  and not supported by the record."  As discussed above, this Court must apply that standard to

26  parole release decisions under the law of this Circuit.

**VII**

**A**

Petitioner argues that some evidence did not support the BPT's finding that he needed additional therapy.  In view of Petitioner's inability to accept responsibility for murdering an unarmed person, the BPT's recommendation that therapy might assist him in recognizing that he will continue to be a threat to the safety of others until he learns how to control his anger and criminal tendencies seems to this Court to be quite a reasonable inference.

**B**

Petitioner further contends that the BPT erred in relying on a correctional counselor's threat assessment in determining his suitability for release on parole.  This argument is contrary to § 2402(b).  That section provides that "[a]ll relevant, reliable information available to the panel shall be considered in determining suitability for parole."  A correctional counselor's opinion regarding an inmate's ability to control his temper and behavior within prison walls is quite relevant to the BPT's determination whether he continues to be a threat to the safety of others.

**C**

Petitioner alleges that the BPT violated his right to a uniform sentence under California law.  He also maintains that the BPT improperly considered the District Attorney's Office's opposition to the setting of a parole release date.  In his amended application for a writ of habeas corpus, Petitioner alleged that he was denied due process because the chair of the BPT was a former police officer.  Each of these claims is based on alleged violations of California law.  Section 2254(a) limits this Court' jurisdiction to violations of federal, not state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions).  The California Supreme Court rejected each of Petitioner's state-law questions.  This Court cannot re-examine them.

/////

1

**Conclusion**

2      The BPT decided not to set a parole release date because it found that the evidence of his

3 commitment offense *and* his nine year history of escalating criminal conduct demonstrated that

4 he continued to pose a risk of danger to society if he were set free.  The BPT's decision is

5 supported by some evidence that outweighs the suitability factors based on his performance

6 while imprisoned.  Thus, the California Supreme Court's denial of his state petition for a writ of

7 habeas corpus was not "contrary to, or involved an unreasonable application of, clearly

8 established federal law, as determined by the Supreme Court of the United States."  28 U.S.C.

9 § 2254(a).

10 /////

11 /////

12      Therefore, it is hereby ORDERED that Petitioner's application for habeas corpus relief is

13 DENIED.  The clerk is directed to enter judgment and close the case.

14 /////

15 DATED: July 25, 2008

16                                          /s/ Arthur L. Alarcón
                                           UNITED STATES CIRCUIT JUDGE
17                                          Sitting by Designation

18

19

20

21

22

23

24

25

26